**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| THEODORE W. WHITE, JR., ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | CASE NO. 05-0203-CV-W-GAF |
| ) | |
| RICHARD McKINLEY, Detective – Lee's ) | |
| Summit, Missouri Police Department ) | |
| ) | |
| Both in his official capacity and his individual ) | |
| capacity, ) | |
| ) | |
| *Serve at:* ) | |
|    1502 S.W. Longview Road ) | |
|    Lee's Summit, MO 64081, ) | |
| ) | |
| and ) | |
| ) | |
| TINA McKINLEY, ) | |
| In her individual capacity, ) | |
| ) | |
| *Serve at:* ) | |
|    1502 S.W. Longview Road ) | |
|    Lee's Summit, MO 64081, ) | |
| ) | |
| and ) | |
| ) | |
| KENNETH T. CONLEE, Chief of Police – ) | |
| Lee's Summit, Missouri Police Department ) | |
| ) | |
| Both in his official capacity and his individual ) | |
| capacity, ) | |
| ) | |
| *Serve at:* ) | |
|    Lee's Summit Police Department ) | |
|    10 N.E. Tudor Road ) | |
|    Lee's Summit, MO 64086, ) | |
| ) | |
| and ) | |

THE CITY OF LEE'S SUMMIT, MISSOURI,  )
a Municipal Corporation,              )
                                      )
*Serve:*                              )
    Karen R. Messerli, Mayor          )
    Lee's Summit, Missouri City Hall  )
    207 S.W. Market Street            )
    Lee's Summit, MO  64063           )
                                      )
        *Defendants.*              )

## COMPLAINT

COMES NOW PLAINTIFF, Theodore W. White, Jr. ("Plaintiff ") and for his Complaint states and alleges as follows:

### A. Parties

1.     Plaintiff is a resident of the State of Missouri.

2.     Defendant Detective Richard McKinley ("Detective McKinley") is a sworn law enforcement officer with the Lee's Summit Police Department.  He resides in Lee's Summit, Jackson County, Missouri.

3.     Defendant Tina McKinley ("Tina") is married to Detective McKinley and also resides in Lee's Summit, Jackson County, Missouri.

4.     Defendant Kenneth T. Conlee ("Chief Conlee") is a sworn law enforcement officer in the State of Missouri and is the Chief of Police of the Lee's Summit, Missouri Police Department.

5.     The City of Lee's Summit, Missouri ("Lee's Summit") is a body corporate organized under the laws of the State of Missouri and is authorized to sue and be sued in its corporate name.

2

**B. Jurisdiction**

6.    Jurisdiction is conferred by 28 U.S.C. § 1343, which provides for original jurisdiction of this Court in suits authorized under 42 U.S.C. § 1983, to redress the deprivation under color of state law, statute, ordinance, regulation, custom or usage of any right, privilege or immunity secured by the Constitution of the United States or by any act of Congress providing for equal rights of citizens or all persons within the jurisdiction of the United States.

7.    This Court also has jurisdiction over Plaintiff's state common law claims pursuant to this Court's supplemental jurisdiction under 28 U.S.C. § 1367.

**C. Bases of Liability:  The Defendants' Violative Custom and Practice, and Deliberate Indifference to Plaintiff's Rights in the Retention, Training, Discipline and Supervision of Law Enforcement and Improper Investigation and Conduct**

8.    All of the actions and/or omissions of the Defendants Detective McKinley, Chief Conlee and Lee's Summit, took place under color of state law pursuant to, acting upon, and in concert with the policies, practices, procedures, patterns, decisions, instructions, orders, and customs of Defendant City of Lee's Summit. Lee's Summit is liable for damages caused by Richard McKinley's and Chief Conlee's intentional and/or wrongful and/or reckless and/or negligent acts and/or omissions while Detective McKinley and Chief Conlee were acting under color of state law and were acting within the course and scope of their employment with Lee's Summit.  All of these acts and/or omissions took place under circumstances where Lee's Summit, Detective McKinley and Chief Conlee are liable as a governmental entity and sworn law enforcement officers in the State of Missouri.  Defendants' liability is based upon allegations including the following things, all of which demonstrate patterns of behavior and deliberate indifference to the issues raised and to the rights of citizens, all of which led to deprivations of

3

rights, privileges and immunities secured by the federal and state constitutions as well as federal and state laws:

a.     Violation and deprivation of constitutional rights as set out in this Complaint;

b.     Inadequate training and instruction of employees on the proper use of police power, proper investigation, proper initiation of criminal charges, accurate and truthful testimony in pending criminal cases and proper prosecution of alleged crime in the State of Missouri;

c.     Inadequate supervision of employees as to the proper use of police power, proper investigation, proper initiation of criminal charges, accurate and truthful testimony in pending criminal cases and proper prosecution of alleged crime in the State of Missouri;

d.     Inadequate discipline of employees as to the proper use of police power, proper investigation, proper initiation of criminal charges, accurate and truthful testimony in pending criminal cases and proper prosecution of alleged crime in the State of Missouri;

e.     Inadequate supervision, training, and retention with resulting poor personnel decisions as to employees regarding the proper use of police power, proper investigation, proper initiation of criminal charges,

4

accurate and truthful testimony in pending criminal cases and proper prosecution of alleged crime in the State of Missouri;

f.    Abuse of police power and arrest power on citizens of the State of Missouri;

g.    Acquiescence in and notice of the actions and omissions described throughout this Complaint;

h.    Failure to avoid, failure to thereafter investigate, and failure to thereafter re-open the underlying investigation and failure to thereafter discipline law enforcement officers for improper conflicts of interest of interested law enforcement officers investigating alleged crimes allegedly committed by citizens of the State of Missouri;

i.    Failure to take remedial action against a known pattern of misconduct by law enforcement officers, both remedial action as to the law enforcement officers and remedial action as to the underlying criminal case in which the misconduct has occurred;

j.    Failure to take significant steps to prevent a known risk of wrongful arrest, prosecution, and imprisonment;

k.    Failure to take significant steps to prevent and remedy false testimony given by law enforcement officers in the

ongoing investigation of a case being prosecuted by the
State of Missouri;

l.      Taking aggressive law enforcement actions without first
having met the standard of probable cause;

m.      Tolerance of misconduct of law enforcement officers and
failing to follow up and properly and thoroughly
investigate misconduct of law enforcement officers
resulting in the wrongful prosecution of innocent citizens
of the State of Missouri; and

n.      Deliberate indifference to and conscious disregard of a
high risk that law enforcement officers would improperly
use their influence as law enforcement officers and/or fail
to protect against such use of improper influence in
violation of Plaintiff's protected rights.

9.      These actions, omissions, policies, practices, procedures, patterns, decisions,
orders, and customs of Defendants were the cause of the constitutional and other violations
described in this Complaint.  These things are established, at least in part, by proof of knowledge
of, acquiescence in, and ratification of all the Defendants' wrongful conduct.

10.     Defendants acted in concert, were joint tortfeasors and are jointly and severally
liable to Plaintiff.

11.     The conduct alleged in this Complaint violated clearly established federal – and
state – protected rights of which every reasonably competent official in Defendants' respective

6

positions would have, or should have, been aware.  As to Defendants' actions and omissions toward Plaintiff, there was no objectively reasonable reliance on existing law.

## D. Factual Allegations Common to All Counts

12.    Plaintiff and Tina were married in December of 1991.

13.    Tina had two children from a previous marriage, Jami White, born June 18, 1985 and Danny White.

14.    Plaintiff adopted Jami White and Danny White as his own daughter and son on January 25, 1996.

15.    Plaintiff and Tina were blessed with a third child, Tanner White, who was born on June 1, 1995.

16.    In the 1990s, Plaintiff was an entrepreneur and a businessman.

17.    Many of the businesses started and operated by Plaintiff were operated from his offices in the community of Lee's Summit, Missouri.

18.    In the Summer of 1997, Plaintiff and Tina suffered marital problems.  The problems worsened because Tina – over Plaintiff's objection – took a check from a mortgage company which refinanced the family residence and secreted the proceeds away in a separate account belonging to her.  Plaintiff then made good on his promise to Tina that if she handled those refinancing proceeds in that fashion, he would leave her.  In the Fall of 1997, Plaintiff moved out of the family home.   Tina then filed for divorce.

19.    After a brief separation, Plaintiff moved back into the family residence.  But Tina never dismissed her petition for dissolution of marriage.

20.    On March 21, 1998, Plaintiff and his adopted son Danny went on a Boy Scout camping trip for the weekend, leaving daughter Jami at home with her mother, Tina.

21.     Jami White was upset with Plaintiff for not taking her on the camping trip even though Plaintiff explained to her that it was strictly a trip for Boy Scouts.

22.     While Plaintiff was out of town, defendant Tina – using her 12 year-old daughter Jami as a pawn – devised a plan to remove Plaintiff from her life.

23.     During a two-hour interrogation, Tina coached her daughter to make false allegations of sexual abuse against Plaintiff.

24.     After the two-hour "session" with Jami, Tina called the Lee's Summit Police Department.  Officer Bledsoe arrived at the White home a short time later to question Jami.

25.     Tina curiously called Plaintiff's mother, Myrna White (with whom Tina had a poor relationship), and asked her to come to the White home.

26.     When Myrna White arrived, Jami disclosed additional false allegations that were never mentioned to Officer Bledsoe.  In hindsight, this was immediate proof that Jami's allegations were false and fabricated by Tina.

27.     On March 22, 1998, Plaintiff and his son Danny returned from the camping trip.  Tina confronted Plaintiff with the fabricated allegations, which Plaintiff denied.

28.     On March 23, 1998, Jami White met with a counselor, Richard Sherman, who conducted numerous counseling sessions with Jami.  In those sessions, Jami underwent "traumatic incident reduction therapy" during which deep muscle relaxation was used to place Jami White in a desensitized, relaxed state while counselor Sherman questioned her about the allegations of abuse, having Jami repeat each allegation 4-6 times so that counselor Sherman could "reframe" her memories of abuse.

29.     The techniques used by counselor Sherman are similar to hypnosis.

30.     As further proof of fabrication, Jami White allegedly "discovered" – during her sessions with Sherman – still more incidents of alleged abuse by Plaintiff, none of which had been disclosed to Tina, Officer Bledsoe, Myrna White or anyone else.

31.     After the first visit with Sherman on March 23, 1998, Detective McKinley was assigned to this case by Chief Conlee.

32.     At the time he was assigned to this case by Chief Conlee, Detective McKinley was responsible for investigating most of the sexual abuse cases arising in Lee's Summit, Missouri.

33.     At the time Detective McKinley was assigned to this case by Chief Conlee, Detective McKinley had received 40 hours of training in the area of investigation of sexual abuse.

34.     During his investigation, Detective McKinley reviewed a diary which was being kept by Jami White.

35.     In her diary – read by both Detective McKinley and Tina – Jami White described many instances of difficulties with her mother and significant stress in the relationship.  The diary of Jami White described her <u>positive</u> relationship with her father, the Plaintiff.

36.     Jami White's diary contained absolutely no mention of the alleged sexual abuse of her by Plaintiff, even though the diary covered a period of time during which much – if not all – of the alleged abuse had occurred.

37.     Detective McKinley and Tina read Jami White's diary and, finding no evidence of any kind which would incriminate Plaintiff, returned the diary to Jami rather than retaining it. Shortly after the diary – evidence which strongly indicated Plaintiff's innocence – was returned, it turned up missing and was never found.

9

38.     Detective McKinley and Tina knew that the diary of Jami White was evidence in an ongoing investigation of an alleged crime and that it contained highly probative evidence of Plaintiff's innocence.

39.     Detective McKinley knew he had a duty to conduct a fair investigation.

40.     Detective McKinley knew he had a duty to investigate and retain all evidence that may refute the allegations of sex abuse made against Plaintiff.

41.     When he returned the diary to Jami White, Detective McKinley knew that he had a duty to preserve the diary as evidence in the ongoing investigation of criminal allegations against Plaintiff.

42.     By the time Detective McKinley completed his initial investigation, Jami White's allegations had grown to 14 incidents of abuse covering a time span between June 1995 and March 1998.

43.     In late March or early April 1998, Detective McKinley drafted, signed and presented a probable cause statement of alleged criminal sexual abuse by Plaintiff to the Jackson County, Missouri Prosecuting Attorney's office, thereby initiating criminal charges against Plaintiff.

44.     Chief Conlee knew of the drafting, signing and presentation of the probable cause statement by Detective McKinley.

45.     The probable cause statement drafted, signed and presented by Detective McKinley to the Jackson County, Missouri Prosecutor's Office was false and without basis.

46.     On April 10, 1998, a warrant was issued for the arrest of Plaintiff.  Detective McKinley arrested Plaintiff at his Lee's Summit business address on April 13, 1998.

## E.  The Adulterous Affair between Detective McKinley and Tina McKinley

47.     On September 25, 1997, well before beginning his investigation of the alleged abuse in March 1998, Detective McKinley came by the home of Plaintiff and Tina to look at a door which needed to be repaired.

48.     In 1998, Detective McKinley and Tina began a romantic, sexual affair.

49.     Detective McKinley knew that his affair with Tina violated policies and procedures of the Lee's Summit, Missouri Police Department.

50.     Detective McKinley kept the affair secret from his superiors at the Lee's Summit, Missouri Police Department for a period of time.

51.     At the time of his affair with Tina, Detective McKinley was married to Jennifer Dawn McKinley and had only been married to her for less than six months when his affair with Tina began.

52.     Shortly after he began his affair with Tina, Detective McKinley separated from his wife.

53.     To supplement his income as a Lee's Summit, Missouri police officer, Detective McKinley performed odd jobs as a handyman in the Lee's Summit area.  These odd jobs involved carpentry and mechanical work.

54.     Detective McKinley finally reported his affair with Tina to defendant Chief Kenneth T. Conlee in June 1998, many months after the affair had begun.

55.     On June 22, 1998, Detective McKinley outlined his admissions of the affair with Tina in an intra-departmental memorandum to Chief Conlee.

**F. The Aftermath of the Adulterous Affair between Detective McKinley
and Tina McKinley**

56.     Upon learning of the affair between Detective McKinley and Tina, Chief Conlee assigned Captain Paul Murphy – a friend of Detective McKinley's – to conduct an internal investigation regarding the affair.

57.     The only assignment given by Chief Conlee to Captain Murphy was to discern whether or not Detective McKinley had coerced or pressured Tina into a romantic relationship, thereby inappropriately using his authority as a police officer.  Chief Conlee did <u>not</u> assign Captain Murphy the task of determining whether the affair had any connection to the allegations against Plaintiff.

58.     Chief Conlee failed to re-open the investigation into Tina and Jami's allegations against Plaintiff, even after he learned of the affair between Detective McKinley and Tina.

59.     Chief Conlee failed to insist direct Captain Murphy – or any other law enforcement officer – to contact other witnesses (besides Tina) concerning the romantic relationship between Detective McKinley and Tina, thus making the so-called "internal affairs investigation" a complete sham.  And, in fact, Captain Murphy interviewed no other witnesses.

60.     Captain Murphy did not investigate the length of the affair between Detective McKinley and Tina, other than accepting their own accounts as the truth.

61.     Although he knew or should have known about the missing diary, Chief Conlee failed to take any action regarding the missing diary which Detective McKinley failed to preserve as evidence.  Chief Conlee failed to order an investigation into the efficacy of Detective McKinley's investigation of the alleged abuse.

62.     Chief Conlee failed to investigate the efficacy of the probable cause statement drafted, signed and presented by Detective McKinley once he learned of the affair.

63. Chief Conlee failed to adequately train and supervise Detective McKinley and other law enforcement officers of the Lee's Summit, Missouri Police Department to ensure that law enforcement officers employed by the City of Lee's Summit, Missouri did not carry on relationships with parties interested in criminal investigations and prosecutions in which the Lee's Summit, Missouri Police Department was involved.

64. Chief Conlee failed to remove Detective McKinley from the ongoing criminal prosecution and investigation of Plaintiff after learning of the affair between Detective McKinley and Tina and after learning about Detective McKinley's convenient mishandling of Jami White's diary. Detective McKinley continued to have contact with the Office of the Prosecuting Attorney in Jackson County, Missouri even after the affair was discovered by Chief Conlee, during which time Detective McKinley remained in contact with the Prosecuting Attorney assigned to the case, Jennifer Mettler.

### G. The Cover-Up of the Adulterous Affair

65. A month before Plaintiff's criminal trial began on February 16, 1999, Detective McKinley's deposition was taken in the case of the *State of Missouri vs. Theodore White, Jr.*, [Case No. CR98-02401 in the Circuit Court of Jackson County, Missouri].

66. In that deposition, Detective McKinley was sworn to tell the truth, the whole truth and nothing but the truth, so help him God.

67. At pages four and five of that deposition, Detective McKinley was asked the following questions and gave the following answers:

> Question:   Okay. You would agree that you have no
>
>                   vested interest in the outcome of this case;
>
>                   correct?

13

|        |                                                      |
|--------|------------------------------------------------------|
| Answer: | Just personal interest?  No.                        |
| Question: | Vested interest, yes, you don't care if it        |
|        | comes back acquittal or guilty, do you?             |
| Answer: | Oh, I care what happens on the case.                |
| Question: | ***But you don't have any personal interest in*** |
|        | ***it?***  You're just doing your job investigating |
|        | the facts of the case; correct?                     |
| Answer: | ***Correct***.                                       |

(Deposition of R. McKinley, January 18, 1999 at 4-5) (Emphasis added).

68.     The testimony given by Detective McKinley and quoted above was false and misleading and in violation of the oath taken by him at the beginning of his deposition and in violation of his sworn oath as a law enforcement officer in the State of Missouri.

69.     At the time of Detective McKinley's testimony quoted above, Assistant Prosecutor Mettler knew of the romantic affair between Detective McKinley and Tina, knew that the affair had become serious, and knew that Detective McKinley and Tina had begun talking about marriage.  Despite that knowledge, Mettler failed to correct the false and misleading testimony of Detective McKinley, and did not notify Plaintiff's counsel or the Court.

70.     As an officer of the court, Detective McKinley himself failed to correct his own false and misleading testimony.

71.     Chief Conlee and Lee's Summit failed to monitor the activities of Detective McKinley after it was learned he was having an affair with an interested witness in the ongoing investigation and prosecution of Plaintiff's criminal charges.  This failure caused or contributed

to cause Detective McKinley's false testimony. And, at all times, Chief Conlee's failure in this regard amounted to a ratification of Detective McKinley's actions.

72.     The defendants, and Assistant Prosecuting Attorney Jennifer Mettler, kept the adulterous affair a secret from the trial court and Plaintiff's criminal defense lawyers.

73.     This was done after the defendants and Mettler met to discuss whether or not disclosure of the adulterous affair should be made to the defense lawyers for Plaintiff. They made a joint and affirmative decision to withhold this exculpatory evidence.

## H.  The First Criminal Trial in *State vs. White*

74.     Not knowing of the adulterous affair between Detective McKinley and Tina, a jury of 12 men and women wrongfully convicted Plaintiff of twelve counts of sexual abuse and other similar crimes.

75.     Knowing of the adulterous affair and knowing she had kept that exculpatory evidence from the defense lawyers for Plaintiff in *State of Missouri vs. Theodore White, Jr.*, Assistant Prosecuting Attorney Jennifer Mettler argued to the jury in the February 1999 trial that Tina had no motivation for making up the allegations of abuse, all the while knowing that in order to maintain the cover-up of the adulterous affair, Tina had every motivation to lie about the alleged abuse and to keep it a secret at all costs for fear that her soon-to-be-wed husband, Detective McKinley, would lose his job and credibility forever.

76.     Assistant Prosecuting Attorney Jennifer Mettler made the arguments described above knowing full well that Detective McKinley had offered misleading and false testimony in his January 18, 1999 deposition. Mettler made no attempt to correct the deceiving testimony offered by Detective McKinley, nor did she attempt to correct the miscarriage of justice against Plaintiff when he was wrongfully convicted in February 1999.

77.     Chief Conlee, Detective McKinley and the City of Lee's Summit, Missouri were complicit in this cover-up and false testimony by failing to come forward and correct the miscarriage of justice done against Plaintiff when he was wrongfully convicted.

### I.  Plaintiff's Escape to Costa Rica

78.     Unable to bear the injustice of being wrongfully convicted, Plaintiff made the decision to escape the injustice and fled to Costa Rica and assumed a false identity.

79.     Plaintiff knew that by fleeing the country he would be leaving his family forever. The decision for Plaintiff was the most difficult decision he had ever made.

### J.  The Cover-up of the Adulterous Affair is Discovered by Defense Counsel for Plaintiff in *State of Missouri vs. Theodore White, Jr.*

80.     Shortly after Plaintiff was wrongfully convicted in February 1999, defense counsel for Plaintiff, Matthew J. O'Connor received an anonymous telephone call from a co-worker of Tina, disclosing that Detective McKinley and Tina had been having an affair for many months prior to the criminal trial in February 1999.

81.     At a lunch meeting with Mettler, before Plaintiff's motion for new trial was due O'Connor disclosed to Mettler that he had received an anonymous telephone call that seriously questioned the integrity of the jury's verdict convicting Plaintiff.  Mettler again sat silent and did not disclose the affair to O'Connor, knowing that the anonymous telephone call was probably about the affair.

82.     Mettler returned to her office and discussed the situation with others in her office and it was decided that the affair should finally be uncovered and disclosed to Plaintiff's criminal defense lawyers.  Ms. Mettler telephoned Matthew J. O'Connor and disclosed the affair.

**K. The Court of Appeals for the Western District of Missouri Reverses the Conviction**

83. Finding the actions of defendants and Jennifer Mettler unconstitutional, the

Missouri Court of Appeals for the Western District reversed the conviction, holding, *inter alia*:

> [I]n failing to correct McKinley's testimony during his
> deposition when he stated that he had no personal interest
> in the outcome of the case, the state violated its duty to
> White.

*State v. White*, 81 S.W.3d 561, 568 (Mo. App. W.D. 2002).

84. In addition, the Missouri Court of Appeals held:

> The prosecution unfortunately jumped to the assumption
> that the relationship was immaterial because the
> relationship arose after the accusations were made. This
> assumption that it was immaterial was not correct,
> however, as a little reflection reveals, because the
> relationship itself raises a question concerning Tina
> White's role in the whole matter. In order for the defense
> to benefit from the information of the relationship, the
> defense need only cause the jury to believe that there is a
> reasonable possibility that even if Tina White did not
> originate the allegations, she assisted and encouraged
> them, arguably modified her own testimony to support the
> allegations, and participated in other ways, such as in
> causing the loss of the diary.

Id. at 570.

85. The Court of Appeals further pointed out:

> At trial, the parties clearly engaged in conflict over the
> defense strategy. The prosecution argued:
>
> > So then I guess we have the conspiracy
> > theory here, that Tina manipulated this
> > whole thing. Well, why did Tina
> > manipulate this whole thing? Why did
> > Tina do such a sadistic, vicious thing, as
> > to have her daughter falsely accuse
> > someone, two and a half years of sexual

> abuse. . . and he wants you to believe
> that there are reasons why Tina would
> help Jami, why Tina would help Jami
> fill in the details, fill in gaps.  Well, if
> Tina was going to help Jami, if that was
> here goal, and we still haven't figured
> out why it would benefit Tina White in
> any way, shape or form to do such a
> thing, she would come up with
> something much better than the things
> she was able to testify to.

Id.

86.     Mettler made these arguments and posed these rhetorical questions, knowing

exactly why Tina would lie:  to protect her soon-to-be wed husband (Detective McKinley), and

to rid herself of Plaintiff forever.

87.     The Missouri Court of Appeals held that the destruction of the diary and the

cover-up of the affair were violations of Plaintiff's constitutional rights and reversed the

conviction.

88.     The reversal of the conviction by the Missouri Court of Appeals was

extraordinary in light of the fact that Missouri's "escape rule" prohibits a fleeing defendant the

opportunity to appeal a conviction.  In Plaintiff's case, the Missouri Court of Appeals made the

extraordinary determination that the violations of Plaintiff's constitutional rights were so severe

that the "escape rule" should not apply.  Plaintiff's convictions were reversed, and he was

granted a new trial.

## K.  The Second and Third Trials of Plaintiff

89.     After the reversal of his conviction in 2002, Plaintiff was tried again by the State

of Missouri in 2004.

90.     The trial in 2004 resulted in a hung jury, which voted 11-1 to acquit Plaintiff.

91.     Because of the hung jury in 2004, the trial court ordered a new trial that took place in January and February 2005, finally resulting in the acquittal of Plaintiff on all counts.

92.     In Plaintiff's 2004 and 2005 trials, the jury had the benefit of knowing of the previously covered-up affair between Detective McKinley and Tina.

93.     Between those two re-trials of Plaintiff, 23 out of 24 jurors overwhelmingly concluded that Plaintiff was innocent of the charges of sexual abuse and related charges.  The one holdout in the second trial was a recalcitrant juror who refused to deliberate.

94.     Plaintiff and his family have expended in excess of $500,000.00 in legal fees and expense in defending against these false allegations of abuse.

95.     The legal fees and expenses regarding the defense of Plaintiff have financially crippled Plaintiff's family and caused great financial and personal losses to Plaintiff.

### Count I

**Claim under 42 U.S.C. § 1983 for Malicious Prosecution,
False Arrest, Use of Unreliable and Fraudulent Investigatory Techniques,
Procurement of Unreliable and Fabricated Evidence,
Wrongful Conviction and Imprisonment**

Plaintiff adopts by reference all prior and subsequent paragraphs of this Complaint.

96.     The illegal arrest, illegal confinement, malicious prosecution and wrongful conviction of Plaintiff was deliberately and intentionally brought about by Defendants.  The arrest, confinement, prosecution, and conviction were the obvious and intended results of the investigation in a manner designed to prove a case against Plaintiff despite his actual innocence, which was or should have been known to the Defendants.

97.     In their investigation, Defendants procured demonstrably unreliable and false evidence.

19

98.     Additionally, Defendants utilized information obtained through counselor Sherman's hypnosis-like sessions, knowing such information was inherently unreliable.

99.     To compound the unreliability further, Defendants Detective McKinley, Chief Conlee and the City of Lee's Summit, Missouri allowed a biased and interfering mother (defendant Tina McKinley) to be present during questioning of Jami White, and to interfere with, direct and otherwise taint the entire investigation.

100.    Defendants maintained policies and practices which ignored the constitutional obligations of the named law enforcement entities and persons to provide evidence of innocence to the defense.  The policies and practices in fact discouraged the providing of exculpatory evidence and permitted schemes, such as the one utilized in Plaintiff's case, in which evidence of innocence was buried or otherwise disposed of unlawfully and in violation of good law enforcement practices and procedures.

101.    The actions of the Defendants constituted unconstitutional seizures of Plaintiff in violation of the Fourth and Fourteenth Amendments to the United States Constitution.  The actions of the Defendants mentioned under this Count resulted in multiple invasions of Plaintiff's rights to due process of law and a fair trial under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and subsequently resulted in the cruel and unusual punishment of Plaintiff under the Eighth and Fourteenth Amendment to the United States Constitution.

102.    The actions of the Defendants mentioned in this Count also resulted in a violation of Plaintiff's right to the effective assistance of counsel under the Sixth and Fourteenth Amendments because the Defendants interfered with defense counsel's ability to provide constitutionally effective assistance.

103.    The actions of the Defendants mentioned in this Count also interfered with Plaintiff's fundamental constitutional rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. All of these constitutional rights are protected by 42 U.S.C. § 1983. The actions of the Defendants mentioned in this Count proximately and directly caused Plaintiff grievous and permanent injury, including nearly six years of incarceration and the attendant loss of freedom, companionship, and income; and the attendant infliction of mental and physical pain, suffering, anguish, fear, including the fear of being incarcerated for the rest of his life for a crime he did not commit. Plaintiff's personal and business reputation suffered permanent damage. For these damages and injuries, Plaintiff is entitled to monetary relief.

104.    The Defendants' actions were deliberate, reckless, wanton, and/or cruel, justifying the award of punitive damages.

### Count II

**Claim Under 42 U.S.C. § 1983 for Conspiracy**
**(Detective Richard McKinley, Tina McKinley, Chief Kenneth T. Conlee and**
**The City of Lee's Summit, Missouri)**

Plaintiff adopts by reference all prior and subsequent paragraphs of this Complaint.

105.    Defendants Detective McKinley, Tina McKinley, Chief Conlee and Lee's Summit, together and under the color of state law, reached an understanding, engaged in a course of conduct, and otherwise conspired among and between themselves to deprive Plaintiff of his constitutional rights, including his right to free association and familial privacy, to be free from unreasonable arrest and seizure, to be free from wrongful conviction and imprisonment, to be free from malicious prosecution, to fair trial and fair access to the courts, to due process of law, to counsel, to be free from cruel and unusual punishment and all basic rights of American

citizens faced with criminal sanctions. The conspiracies depived Plaintiff of rights protected by the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments and 42 U.S.C. § 1983.

106. The conspiracy was also intended to and had the effect of depriving Plaintiff of his rights to association with his family, not the least of whom is his natural son, Tanner White, and to familial privacy, in violation of their rights under the First, Ninth, and Fourteenth Amendments to the United States Constitution.

107. Tanner White was known to some of the co-conspirators as being Plaintiff's son.

108. The Defendants named in this Count, together with unsued co-conspirators, committed the overt acts set forth in the factual statements above. The overt acts involved the wrongful arrest, prosecution, conviction, and imprisonment of Plaintiff. It also included the manufacture of knowingly false and knowingly unreliable evidence which was intended to inculpate Plaintiff; the suppression of exculpatory evidence; intentional failure to investigate evidence which would exculpate Plaintiff; and the filing of false, misleading, and unreliable reports as part of the investigation. The conspiracy was designed to prove a case against Plaintiff despite his actual innocence which was or should have been known to Defendants.

109. The overt acts are violative of the constitutionally protected rights of Plaintiff.

110. The conspiracies and overt acts were continuing in nature and caused Plaintiff constitutional deprivations, injuries, pain, suffering, mental anguish, conviction, incarceration, humiliation, and loss of freedom, companionship and income. Plaintiff also suffered permanent damage to his personal and professional reputation.

111. Because the actions were deliberate, reckless, wanton, and/or cruel, punitive damages are justified.

## Count III

### Claim Under 42 U.S.C. § 1983 for Suppression of Exculpatory Evidence
### (Detective Richard McKinley, Tina McKinley, Chief Kenneth T. Conlee and
### The City of Lee's Summit, Missouri)

Plaintiff adopts by reference all prior and subsequent paragraphs of this Complaint.

112.    Defendants, along with other investigative and prosecutorial personnel, together and under the color of state law, kept from Plaintiff and his counsel exculpatory information, including information supporting his innocence (including the Jami White diary and the facts involving the adulterous affair between Richard McKinley and Tina McKinley) casting doubt on the reliability of the primary witnesses against Plaintiff.

113.    The withholding of various types of exculpatory evidence was in violation of Plaintiff's rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, as protected by 42 U.S.C. § 1983.  The withholding of exculpatory evidence proximately and directly.

114.    Plaintiff is therefore entitled to monetary relief.

115.    Because the actions were deliberate, reckless, wanton, and/or cruel, punitive damages are justified.

## Count IV

### 42 U.S.C. § 1983 Claim Against the City of Lee's Summit, Missouri

Plaintiff adopts by reference all prior and subsequent paragraphs of this Complaint.

116.    The City of Lee's Summit, Missouri had in effect, both before and at the time of the events alleged in this Complaint, policies, practices, and customs which operated to deprive Plaintiff of his constitutional rights.

23

117. The City of Lee's Summit, Missouri is accountable under 42 U.S.C. § 1983 because it established policies and practices that were intended to and did encourage, endorse, and reward their agents and employees for violating the constitutional rights of Plaintiff and other similarly situated persons. At a minimum, the supervisors and the governmental units were deliberately indifferent to such constitutional violations.

118. The unconstitutional policies and practices include, but are not limited to:

a. a policy, practice and custom of failing to properly train and supervise officers in the techniques of reliably investigating serious crimes;

b. a policy, practice and custom of using interrogation techniques which, though having an increased likelihood of obtaining information from persons, had a great likelihood of obtaining false and unreliable information from suspects and witnesses;

c. a policy, practice, and custom of suppressing, destroying or otherwise secreting exculpatory evidence from the defense and limiting defense access to meaningful evidence;

d. a policy, practice, and custom of failing to discipline officers who violate the Constitution or law or otherwise transgress the rights of criminal suspects during their investigations;

e. a policy, practice, and custom of failing to adequately supervise law enforcement officers known by it to have falsely testified, known by it to have destroyed evidence and known by it to have had an ongoing affair with an interested witness in a criminal prosecution;

f. a policy, practice, and custom of being deliberately indifferent to the violation by law enforcement officers of the rights of the accused.

119. The City of Lee's Summit, Missouri had acquired, before and during the time periods of Plaintiff's prosecution, each of the policies, practices and customs listed in this Count.

120. Additionally, the City of Lee's Summit acted in concert with the Lee's Summit Police Department in a collaborative effort to adopt and perpetuate the unconstitutional policies, practices, and customs of each other.

121. These interrelated policies, practices, and customs, separately and together, were implemented intentionally to deprive possible targets of criminal investigations of their constitutional rights, or, at the very least were implemented with a deliberate indifference to the rights of possible targets of criminal investigation and were a direct and proximate cause of the Constitutional violations and injuries, as set forth in Counts I, II, and III of this Complaint.

## Count V

### Claim for Negligence Resulting in Wrongful Incarceration and Continued Detention (Detective Richard McKinley, Tina McKinley, Chief Kenneth T. Conlee and The City of Lee's Summit, Missouri)

Plaintiff adopts by reference all prior and subsequent paragraphs of this Complaint.

122. If Defendants and other unnamed law enforcement and civilian co-conspirators did not act intentionally, deliberately and in bad faith, they did put together against Plaintiff an unreliable case through negligent investigation, irresponsible procurement and destruction of evidence, and inadequate training and supervision. The City of Lee's Summit, Missouri is responsible for this negligence under the doctrine of respondeat superior.

123. The Defendants named in this Count are responsible for negligence in causing the incarceration and continued detention of an innocent person, Plaintiff.

124. In addition to owing Plaintiff a duty of care in the period of time leading up to his prosecution, they had a duty to inquire – especially upon the receipt of information casting doubt on Richard McKinley's credibility – regarding the correctness of the incarceration.

125.    The negligence in causing the incarceration and continued detention of Plaintiff, despite the existence of evidence pointing toward innocence, proximately and directly caused Plaintiff grievous personal injury, including nearly six years of incarceration and the attendant loss of freedom, companionship and income, and the attendant mental and physical pain, suffering, anguish, fear, including the fear of spending the rest of his life in prison and dying in prison despite innocence.    Plaintiff also suffered permanent damage to his personal and professional reputation.

126.    Because Defendants' actions were deliberate, reckless, wanton, and/or cruel, Plaintiff is entitled to punitive damages.

## Count VI

### Claim Under Missouri Common Law for False Arrest
### (Detective Richard McKinley, Tina McKinley, Chief Kenneth T. Conlee and
### The City of Lee's Summit, Missouri)

Plaintiff adopts by reference all prior and subsequent paragraphs of this Complaint.

127.    Defendants, acting in concert each with the other, did willfully and unlawfully and under color of legal authority, illegally arrest and/or permit the illegal arrest of Plaintiff and detained him against his will without due and legal process.  As a result of the false arrest, the Defendants caused Plaintiff grievous personal injury, including nearly six years of incarceration and the attendant loss of freedom, companionship and income, and the attendant mental and physical pain, suffering, anguish, fear, including the fear of spending the rest of his life in prison and dying in prison despite innocence.  Plaintiff also suffered permanent damage to his personal and professional reputation.

128.    Because Defendants' actions were deliberate, reckless, wanton, and/or cruel Plaintiff is entitled to punitive damages.

## Count VII

### Claim Under Missouri Common Law for Malicious Prosecution
(Detective Richard McKinley, Tina McKinley, Chief Kenneth T. Conlee and
The City of Lee's Summit, Missouri)

Plaintiff adopts by reference all prior and subsequent paragraphs of this Complaint.

129.    Defendants, acting in concert each with the other, did willfully, unlawfully, and maliciously cause Plaintiff to be falsely prosecuted in court and as a result of this prosecution Plaintiff suffered great distress, pain, fear, anguish, suffering, and monetary damages.

130.    The Defendants fabricated evidence, suppressed evidence of innocence, destroyed and/or participated in the destruction of evidence, and built a case based on inaccurate and misleading information.  Because of this malicious activity, Plaintiff suffered great distress, pain, anguish, fear and suffering and monetary damages.  Plaintiff also lost his freedom, and suffered permanent damage to his personal and professional reputation.

131.    Because of the malicious, willful, and reckless nature of the Defendants' actions, Plaintiff is entitled to punitive damages.

### CLAIMS FOR DAMAGES

132.    The actions of Defendants deprived Plaintiff of their civil rights under the First, Fourth, Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution.

133.    The unlawful and reckless acts of the Defendants resulted in malicious prosecution, abuse of process, and false arrest.

134.    The unlawful and reckless acts caused Plaintiff severe emotional distress, pain, humiliation, anguish, loss of companionship, and financial loss.  Plaintiff also lost his freedom, and suffered permanent damage to his personal and professional reputation.

27

135.     Because the Defendants' actions were deliberate, reckless, wanton and/or cruel, awards of punitive damages are justified.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court will:

a.     assume jurisdiction of this cause to determine this controversy and this case for hearing on the merits;

b.     award compensatory damages to Plaintiff, and against the defendants, jointly and severally, in the amount of $75,000,000.00.

c.     award punitive damages to Plaintiff, and against the Defendants, jointly and severally, in the amount of $25,000,0000.00.

d.     award to Plaintiff his costs and attorney fees, pre-judgment and post-judgment interest, all other damages allowed by law, and such other and further relief the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury trial under Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**THE MCCALLISTER LAW FIRM**,
*A Professional Corporation*

By:    /S/ BRIAN F. McCALLISTER
        Brian F. McCallister   Missouri Bar #37383
        Jarrett A. Johnson      Missouri Bar #42481
        917 West 43rd Street
        Kansas City, Missouri 64111-3133
        Telephone:     (816) 931-2229
        Facsimile:      (816) 756-1181
        E-mail:          info@mccallisterlawfirm.com
        ATTORNEYS FOR PLAINTIFF
        THEODORE W. WHITE, JR.