# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| THEODORE W. WHITE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 05-0203-CV-W-NKL |
| | ) |
| RICHARD McKINLEY, et al, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Before the Court is Plaintiff Theodore W. White's ("White") Motion for an Award of Fees and Costs [Doc. # 399]. For the following reasons, the Court grants the motion in part and denies it in part.

**I.     Background**

White brought this lawsuit under 42 U.S.C. § 1983 against Defendants Richard McKinley ("McKinley"), Tina McKinley ("Tina"), the City of Lee's Summit ("Lee's Summit"), and Lee's Summit Police Chief Kenneth Conlee ("Conlee"). White alleged that the Defendants deprived him of a fair criminal trial. The details of White's allegations are set forth in the Court's order on McKinley's alternative motions for judgment as a matter of law, new trial, and amended judgment.

1

Defendants Lee's Summit and Conlee were dismissed with prejudice from the case in September 2006. As part of the settlement, Lee's Summit agreed to indemnify any judgment against McKinley. In August 2008, after a two-week trial on White's § 1983 claims, the jury returned a verdict in favor of White, awarding him $14 million in damages, $1 million against McKinley in punitive damages, and $1 million in punitive damages against Tina.

White brings his motion for attorney fees and costs on the basis that he qualifies as a § 1983 prevailing party entitled to reimbursement under 42 U.S.C. § 1988. Attorneys from two law firms represented White: Loevy & Loevy in Chicago and the McCallister Law Firm in Kansas City. White states that the McCallister Law Firm handled the early stages of litigation and, after it brought Loevy & Loevy in to assist, the two firms generally split the work relatively evenly. The following chart shows the claimed numbers of hours and billable rate for each attorney:

| Firm | Attorney | Hours | Rate | Total |
|---|---|---|---|---|
| Loevy & Loevy | Michael Kanovitz | 1,239.25 | $395.00 | $489,503.75 |
| | Arthur Loevy | 146.5 | $470.00 | $68,855.00 |
| | Jonathan Loevy | 84.75 | $395.00 | $33,476.25 |
| | Firm Total: | 1,400 | | $591,835.00 |
| McCallister Law Firm | Brian McCallister | 1,206.50 | $400.00 | $482,600.00 |
| | Cynthia Short | 334.75 | $400.00 | $133,900.00 |
| | Christopher Lawler | 620.50 | $250.00 | $155,125.00 |
| | Paralegals | 1,165.75 | $60.00 | $69,945.00 |
| | Firm Total: | 2,100 | | $841,570.00 |
| Grand Total | | 3,500 | | $1,433,405.00 |

White seeks reimbursement for $170,733.86 in taxable expenses and other costs. White supports his motion with the following evidence: billing records; affidavits of his own attorneys concerning their qualifications, experience, and billing rates; affidavits of other attorneys; case law; and detailed billing records and expense receipts. McKinley was the only responding defendant.

**II.    Discussion**

    **A.    Purpose of Fee Awards**

McKinley does not dispute White's status as a prevailing party entitled to an award of reasonable attorney fees and costs under 42 U.S.C. § 1988. The Eighth Circuit has explained the reasons behind § 1988's provision for fee and costs awards:

3

Congress intended that "[i]n computing the fee, counsel for prevailing parties should be paid, as is traditional for attorneys compensated by a fee-paying client, 'for all time reasonably expended on a matter.' " S.Rep. No. 1011, 94th Cong., 2d Sess. 5 (1976), reprinted in 1976 U.S.C.C.A.N. 5908, 5913. The primary purpose of this formulation is to promote diffuse private enforcement of civil rights law by allowing the citizenry to monitor rights violations at their source, while imposing the costs of rights violations on the violators. *See Id.* A plaintiff bringing a civil rights action "does so not for himself alone but also as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority. If successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest...." *Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968).*

In order for such a policy to be effective, Congress felt it appropriate to shift the true full cost of enforcement to the guilty parties to eliminate any obstacle to enforcement. "It is intended that the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases...." S.Rep. No. 1011, 94th Cong., 2d Sess. 5 (1976), reprinted in 1976 U.S.C.C.A.N. 5908, 5913.

Fee awards must be structured so that attorneys of quality and experience with other profitable demands upon their time will not need to sacrifice income available in alternative enterprises in order to effect a public policy intended to protect all citizens. In other words, "the market rate of legal time is the opportunity cost of that time, the income foregone by representing this plaintiff." *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1149 (7th Cir.1993) (quoting *Barrow v. Falck*, 977 F.2d 1100, 1105 (7th Cir.1992)). Any other rule would relegate civil rights enforcement (and the law that results) to those lawyers with below-market billing rates. The rates for these lawyers are usually below market for a reason. A refusal to pay for experience and expertise will exact a cost in the form of inexperience and, perhaps, incompetence.

*Casey v. City of Cabool, Mo.*, 12 F.3d 799, 805 (8th Cir. 1993). With these purposes in mind, the Court considers White's motion.

**B.** **Lodestar**

The starting point for determining a reasonable attorney fee is the "lodestar" calculation: that is, the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Hanig v. Lee*, 415

4

F.3d 822, 825 (8th Cir. 2005). The party seeking the award should submit documentation supporting the requested amount, making a good faith effort to exclude hours that are excessive, redundant or otherwise unnecessary. *Hensley*, 461 U.S. at 434; *see also Philipp v. ANR Freight System, Inc.*, 61 F.3d 669, 675 (8th Cir. 1995) (reducing fee because of inadequate documentation). In other words, counsel must exercise "billing judgment" and be mindful that "hours that are not properly billed to one's client also are not billed to one's adversary pursuant to statutory authority." *Hensley*, 461 U.S. at 434 (citation omitted).

To determine the lodestar amount, courts may consider:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*United HealthCare Corp. v. American Trade Ins. Co.,* Ltd., 88 F.3d 563, 575 n.9 (8th Cir. 1996) (citing *Hensley*, 461 U.S. at 434 n.3). Courts may exclude from lodestar calculations hours not reasonably spent on litigation. *Keslar v. Bartu*, 201 F.3d 1016, 1018 (8th Cir. 2000) (affirming district court reduction of fee award based on an unreasonable number of billed hours where the district court referred to defendant's brief rather than detail the basis for its reduction). There is a strong presumption that the lodestar calculation represents a reasonable fee award. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).

5

### 1. Amount Involved and Results Obtained

"The most critical factor in assessing fees is the degree of success obtained." *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 853 (8th Cir. 2002) (citing *Hensley*, 461 U.S. at 434). By any measure, the $16 million judgment in this case is substantially favorable. Though percentage is not a separate consideration in lodestar calculations, the fees requested here are less than nine percent of the judgment, substantially below what a contingent fee would normally be. Fees in civil rights cases sometimes outweigh judgments entirely. Moreover, White's attorneys secured an agreement from Lee's Summit to indemnify McKinley in full – an agreement which may render enforceable an otherwise uncollectible judgment. The results obtained weigh strongly in favor of granting White's motion.

### 2. Time/Labor Required

McKinley takes issue with the number of attorneys representing White and the number of hours claimed by them. As to the number of attorneys, McKinley argues that White is not entitled to reimbursement for the services of each of his several attorneys' services, emphasizing that McKinley himself was represented by two attorneys and one paralegal. As to the hours of those attorneys, McKinley cites only to his own billing records for his argument that White's attorneys' hours are excessive. White's attorneys expended a little more than twice the 1,600 hours spent by McKinley's attorneys.

Courts may reduce attorney hours for inefficiency and duplication of services in cases where more than one attorney is used. *A.J. ex rel. L.B. v. Kierst*, 56 F.3d 849, 865 (8th Cir.

6

1995). However, the "use of more than one attorney in multiple party litigation has been recognized by . . . [the Eighth Circuit] as both desirable and common." *Id*. Also, the number of hours worked by opposing counsel "is not an immutable yardstick of reasonableness." *Shaw v. AAA Eng'g & Drafting*, 213 F.3d 538, 542-43 (10th Cir. 2000) (finding no abuse of discretion in the district court's approval of plaintiff's counsel's hours, despite plaintiff's counsel having spent nearly twice as many hours prosecuting as defense counsel did defending the case).

There are several reasons why the number of White's attorneys and their hours need not match those of McKinley's attorneys. It appears from the billing records in this case that White had six attorneys representing him. More than seven different law firms and over twenty attorneys represented various Defendants during this litigation, nine from McKinley's current counsel's firm. Because McKinley successfully objected to White's motion to have the teams of lawyers representing other Defendants produce their billing records, these numbers do not include attorneys from other firms who may not have filed appearances. Thus, Defendants - and McKinley alone - had more lawyers than White.

More specifically, McKinley complains of the approximately six lawyers and one paralegal White's team devoted to the trial. This number was not unreasonable given the volume of evidence and complexities of the case. It was acceptable for attorneys on White's trial team to observe the trial where they were obviously assigned with researching legal issues and examining witnesses whose testimony overlapped with others on the stand.

7

Indeed, there were times during the trial when it was apparent that McKinley's trial team quite frankly could have used additional help. White's trial team was not unreasonably large.

As for hours, unlike White's counsel, McKinley's lawyers were able to economize on billing through coordinating their efforts with other defense counsel. McKinley's billing records indicate that his counsel frequently split discovery and briefing tasks with the teams of attorneys representing other Defendants during pretrial litigation. White cites to portions of McKinley's counsel's billing records, indicating multiple consultations and meetings with other Defendants' counsel.

Also, the total defense hours may well have been greater than those of White. Though the available records show that White's attorney's expended twice the hours of McKinley's alone, White was fighting four teams of attorneys representing various Defendants. Although the records of attorneys representing Defendants other than McKinley are not part of the record, their cumulative hours may be more than the hours spent by White alone.

In addition, White bore the burden of proof in this case. It is reasonable that his counsel's hours would exceed those of McKinley. The degree of success in this case supports a finding that the number of hours spent was reasonable: White's attorney's diligence in organizing, researching, conducting discovery, negotiating, briefing, arguing and presenting evidence in this case lead to a significant verdict in favor of White.

      **a.    Particular Billing Issues**

8

McKinley argues that certain hours should be cut from White's fee award. With no supporting evidence or citation and only limited argument, he randomly suggests slashing the hours billed by various White attorneys for certain tasks. The Court has considered McKinley's arguments and summarily addresses those that bear noting. While the Court does not doubt that White's attorneys worked the hours charged, certain hours have been cut because the Court cannot find that they would reasonably have been charged to a fee-paying client:

- Mr. Kanovitz's Hours of Trial Preparation Before and During Trial: It was not unreasonable for Mr. Kanovitz to spend six weeks preparing for this particular trial. Billing approximately nine hours per day before trial and fourteen hours per day during trial was not unreasonable for an attorney with Mr. Kanovitz's level of responsibility. His preparation was apparent during trial.
- Mr. Kanovitz's Hours Regarding Juror Questionnaires: The time entries on September 8 and 18 reflect an excessive number of hours devoted to issues related to researching the questionnaires – over nine. The time awarded for those dates will be cut by three hours total.
- Hours on McKinley's, Tina's, Conlee's, and White's Daughter's Depositions: The use of two (or more) attorneys was appropriate on these depositions. Each witness (and/or Defendant) was critical and had changed their stories over the course of this case and White's criminal case.
- Mr. McCallister's Hours in Drafting the Complaint: The time entries for this task show an excessive number of hours – over one-hundred. The time awarded for the task will be cut by eighteen hours total.
- Mr. McCallister's Hours in Preparing Discovery Requests: The time entries for this task show an excessive number of hours – approximately thirty-five. The time awarded for the task will be cut by five hours total.
- Mr. McCallister's Hours in Preparing Witnesses: The time entries for preparing witnesses cannot be found unreasonable. Different witnesses may need more preparation time and it cannot be determined in advance how critical their testimony will be to a case.
- Mr. McCallister's Hours Regarding October 26, 2005 Mediation: The time entries for this task are not unreasonable.

9

- Mr. McCallister's and Mr. Lawler's Hours Reviewing Documents: The time entries for reviewing the massive amount of documents in this case are not unreasonable.
- Mr. McCallister's and Mr. Lawler's Hours Traveling to Chicago: The time entries for one trip to Chicago are reasonable.
- Mr. McCallister's and Mr. Lawler's Hours on Dr. Esplin's deposition: The use of two attorneys was appropriate for this expert witness.
- Mr. Lawler's Miscellaneous Hours: It appears there is a duplicate entry for Mr. Lawler's time on May 21, 2008; the second 2.5 hour entry will be cut. His entries for August 30, 31, and September 3 do not relate to legal work and will be cut.
- Legal Research: White's attorney's strategic choices concerning legal research cannot be found to be unreasonable.
- Hours on Sanctions Motions: The motion is not frivolous. The time entries for this task are not unreasonable.
- Legal Assistant's Time in Preparing Documents: The time entries for this task are not unreasonable.
- Legal Assistant's Time in Preparing Trial Exhibits/Trial Notebooks: The time entries for this task show an excessive number of hours – over 375 and 175, respectively. The time awarded for the task will be cut by 125 and 50 hours, respectively.

The Court itself has spent hundreds of hours on this case. Other than as noted above, the Court does not find unreasonable the number of hours expended by White's attorneys.

## 2. Experience, Reputation, and Ability of the Attorneys

White's attorneys have significant experience, positive reputations, and – as demonstrated throughout this litigation – ability. Each of White's attorneys has submitted an affidavit concerning his or her experience. A cursory review of national legal research databases demonstrates that White's Loevy & Loevy attorneys in particular have had extensive civil rights trial experience and success. White's filings and the attorneys' trial work were of high quality by any measure; they demonstrated skill in organizing their case,

making legal arguments, and presenting evidence. The experience, reputation, and ability of White's attorneys weigh significantly in favor of granting his motion.

### 3. "Undesirability" of the Case, Novelty/Difficulty of the Questions, Skill Required, and Awards in Similar Cases

Given the accusations of child molestation, this was not an easy case and many lawyers would have turned it down. Significantly, much of the evidence favoring White was circumstantial.

The legal issues in this case were complex, the facts were many and dramatically complicated for a civil rights case. The case took two weeks to try even after the Court eliminated large, inadmissible portions of the evidence. Further, White was faced with the fact that the prosecutors had known about some of the evidence White claimed McKinley suppressed. In addition, the trial originally scheduled was delayed at the last minute because of a futile appeal on the qualified immunity issue. Applying constitutional law so as to prevail in this case required a level of skill and experience not possessed by most lawyers. As in many civil rights cases, there was a very real risk of no judgment.

Moreover, even if the attorneys could secure a judgment in favor of White, there was a very real risk that it would be unenforceable. There was relatively little available insurance coverage, with various Defendants' insurers claiming limited or no coverage.

White's counsel took on the case despite these challenges. They took over thirty depositions, examined thousands of pages of documents, and prevailed in pretrial motion practice as well as on interlocutory appeal just to get the case to the trial in which they

11

prevailed. Through this work and negotiation, they made the judgment more enforceable by means of settlement with Lee's Summit and Conlee. The "undesirability" of White's case, the difficulties attendant to White's claims, the awards in similar cases, and the skill required to establish them weigh in favor of granting his motion.

### 4. Opportunity Costs

The number of hours devoted by White's attorneys to his case represents forgone opportunity costs. Neither firm is large. Though White does not name specific work his lawyers turned down as a result of his case, the hours spent no doubt could have been devoted to at least some other work.

McKinley argues that the opportunity costs to both law firms should not be considered where, in post-trial motions, White requested deadline extensions on the basis that Mr. Kanovitz was the lead researcher and draftsman and was occupied with other matters. All cases have lead attorneys; having one lead attorney on a case does not negate the opportunity costs paid by all attorneys who forego other pursuits in favor of civil rights litigation. The opportunity costs incurred by White's attorneys weigh in favor of granting his motion.

### 5. Prevailing Market Rates

White submits various evidence in support of the hourly rates he suggests in his motion. This includes an affidavit from Patrick Stueve, a Kansas City litigation attorney, affirming the reasonableness of the rates charged by White's Kansas City attorneys. White also submits evidence that several courts have approved Loevy & Loevy's fee petitions

12

almost in their entirety in the past. He cites to cases approving rates similar to those he suggests for Mr. Kanovitz, Jon Loevy, and Mr. Arthur Loevy personally. He submits an affidavit indicating that recent Chicago billing rates at large firms range from $440 (for a 1999 graduate) to $685 an hour (for a 1964 graduate). He submits a Missouri Lawyers Weekly article detailing local Kansas City billing rates. White cites to various cases approving rates higher than those he suggests in his motion for both his Chicago and Kansas City lawyers.

Finally, White cites to the "Laffey Matrix" – a chart created by the United States Attorney's Office for the District of Columbia. White cites to the several courts throughout the nation which have relied on the matrix as a guideline for reasonable rates. Even adjusting for locality, the matrix would dictate a rate of $426 per hour for Mr. Kanovitz and Jon Loevy (who are seeking $395 per hour), $484 per hour for Mr. Arthur Loevy (who is seeking $450 per hour), $451 per hour for Mr. McCallister and Ms. Short (who are seeking $400 per hour),$261 per hour for Mr. Lawler (who is seeking $250 per hour), and $130 per hour for paralegals (who are seeking $60 per hour). The rates suggested in White's motion fall comfortably within those suggested by his supporting evidence.

Nonetheless, McKinley takes issue with the hourly rates White suggests. First, McKinley argues that White's Chicago lawyers should not be paid Chicago rates. He states that the appropriate rate is that within the community, which, in this case, is Kansas City. Apparently, based on McKinley's attorney's "recollection," McKinley suggests that $250 is

13

the maximum hourly rate for civil rights litigation in the Kansas City area. Without evidentiary support, McKinley suggests the following allowable hourly rates for White's attorneys: $275 for Mr. Kanovitz; $250 for Mr. McCallister, Arthur Loevy, and Ms. Short; and $150 for Mr. Lawler. He does not suggest a rate for Jon Loevy.

"As a general rule, a reasonable hourly rate is the prevailing market rate, that is, the ordinary rate for similar work in the community where the case has been litigated." *Moysis v. DTG Datanet*, 278 F.3d 819, 828,-829 (8th Cir. 2002) (citation omitted). However, there are times when limiting appropriate rates to those of the community where a case has been litigated may not be appropriate. In *Case v. City of Cabool*, 12 F.3d 799 (8th Cir. 1993), the Eighth Circuit explained:

> To limit rates to those prevailing in a local community might have the effect of limiting civil rights enforcement to those communities where the rates are sufficient to attract experienced counsel. Civil rights would be more meaningful, then, in those communities (large cities) where experienced attorneys can command their customary fees. This result would be in direct contravention of the purpose of diffuse enforcement through the 'private attorneys general' concept.

*Id.* at 805. In addition, the Eighth Circuit has affirmed approval of higher hourly rates based on the specialized skill of counsel. *See Hendrickson v. Branstad*, 934 F.2d 158, 164 (8th Cir. 1991) (affirming rate based on that of comparable nationally-prominent federal civil rights counsel, rather than Iowa counsel, because of attorney's status as recognized national expert in area of civil rights law). Given the extraordinary nature of White's case – faced with unsympathetic clients, difficult facts, and the conspiratorial nature of the alleged Constitutional violations – it was not unreasonable for White's Kansas City attorneys to call

14

in support from attorneys in Chicago with a specialization in difficult civil rights cases. Very few attorneys could have undertaken such a complex case, and McKinley offers no evidence of comparably successful and experienced firms or attorneys within the Kansas City market. As such, an award based on Chicago rates is appropriate.

As evidenced by the exhibits to White's motion, his Chicago attorneys' rates are reasonable for Chicago. While it would not necessarily be appropriate to award Loevy & Loevy attorneys fees identical to those charged by large Chicago firms, their suggested rates fall well-below large-firm rates. At the same time, their work – in conjunction with that of the McCallister Law Firm – reflected a skill, tenacity, and marshaling of resources comparable to that which would have been provided by a high quality large firm.

Regardless of whether Chicago or Kansas City rates should apply, White has demonstrated that the suggested hourly rates for all of his attorneys are reasonable. In other markets smaller than Chicago, courts have approved rates higher than those requested by White's Chicago - and Kansas City - attorneys for counsel with civil rights expertise. *See, e.g., Republican Party of Minn v. White*, 456 F.3d 912 (8th Cir. 2006) (approving, in Minnesota case, rate of $425 per hour).

"Once an attorney provides evidence of his billing rate, the burden is upon the defendant to present evidence establishing a good reason why a lower rate is essential. . . . A defendant's failure to do so is essentially a concession that the attorney's billing rate is reasonable." *People Who Care v. Rockford Bd. of Educ., School Dist. No. 205*, 90 F.3d 1307,

15

1313 (7th Cir. 1996) (citation omitted) (finding abuse of discretion in discounting hourly rate where the attorney seeking a fee award had produced sample of other billing, evidence of fee awards in similar cases, and billing rates of other attorneys at the same firm). White's proposed hourly rates are reasonable.

### 6. Fixed vs. Contingent Fee

White's attorneys worked on a contingent basis. Given the case, this meant a very real risk of earning zero dollars per hour.[1] Without arguing for a separate enhancement above the lodestar calculation, White argues that the contingent nature of his fees justifies an hourly rate toward the higher end of the reasonable spectrum. McKinley does not respond to White's argument in this regard. Though the hourly rates suggested in White's motion are reasonable regardless of whether they were fixed or contingent, their contingent nature weighs in favor of granting his motion. *See Blanchard v. Bergeron*, 489 U.S. 87, 91 (1989) (finding that contingent fee arrangement did not set ceiling on § 1988 recoverable fees; "The . . . contingency-fee factor is simply that, a factor. The presence of a pre-existing fee agreement may aid in determining reasonableness.").

### 7. Nature and Length of Relationship with Client

---

[1] As evidence of the risks associated with such cases, Jon Loevy submitted an affidavit discussing other cases in which Loevy & Loevy spent hundreds of thousands of dollars and thousands of hours on losing efforts. *See also Manning v. United States*, 546 F.3d 430, 438 (7th Cir. 2008) (affirming district court's vacating of $6.5 million jury verdict for Loevy & Loevy client).

16

While the parties do not separately address this factor, at least one White attorney had a longstanding relationship with him. Ms. Short participated in White's criminal defense team, and was intimately familiar with the case. Her experience with the facts of this case no doubt brought invaluable benefit to his pursuit of this case. At least as to her fees, this factor weighs in favor of granting White's motion.

**B.     Apportioning Fees/Costs Among Defendants**

McKinley argues that fees must be apportioned among the various Defendants to this matter. He asserts that Defendants Lee's Summit and Conlee were dismissed from this suit with prejudice, with White to assume the fees and costs of the action against them. McKinley notes that Tina was his co-defendant at trial. McKinley argues that White has not and cannot accurately apportion fees between the Defendants by evaluating individual services. McKinley claims that he should be charged with one-fourth of the reasonable fees associated with this case before the September 12, 2006 settlement with Lee's Summit and Conlee, and one-half of the reasonable fees associated with this case from that date through the rendering of the jury verdict. McKinley makes this argument without citation.

Where a plaintiff's claims center on a common core of facts, counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide hours on a claim-by-claim basis. *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). When determining fee awards in such cases, courts must focus on the "overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation" as opposed to considering the

17

claims discretely. *Id. See also Concord Boat Corp. v. Brunswick Corp.*, 309 F.3d 494, 497 (8th Cir. 2002) (finding that district court abused its discretion in apportioning costs among losing plaintiffs in antitrust matter where apportionment was based on erroneous theory) (citing *Walker v. United States Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 773 (5th Cir. 1996) (finding joint and several liability for attorney fees was appropriate where parties had a joint legal team and shared witnesses and there was a single, indivisible injury)). In civil rights actions, "it is frequently appropriate to hold all defendants jointly and severally liable for attorneys' fees in cases in which two or more defendants actively participated in a constitutional violation." *Turner v. District of Columbia Bd. of Elections & Ethics*, 354 F.3d 890, 897-98 (D.C. Cir. 2004) (internal punctuation omitted) (citing *Herbst v. Ryan*, 90 F.3d 1300, 1305 (7th Cir. 1996)). "Section 1988 does not permit a court to inquire into defendants' comparative fault where to do so obstructs Congress' purpose of compensating successful private attorneys general." *Id.* at 898 (citation omitted).

However, where portions of a suit are not fairly attributable to other parties, courts may apportion fees and expenses to the party who caused them. *Id.* at 899. Courts doing so do not allocate hours on the per capita basis suggested by McKinley. Instead, they seek to apportion time based on severable claims. *See Hendrickson v. Branstad*, 934 F.2d 158 (8th Cir. 1991) (approving reduction of fee award against remaining defendants by ten percent where those defendants were added two years after the case commenced); *Jenkins by Agyei v. State of Mo.*, 838 F.2d 260, 264-65 (8th Cir. 1988) (affirming fifteen percent reduction in

18

fee award where the plaintiff prevailed as to some but not all of the defendants, based on *Hensley*'s "degree of success" factor). When apportioning fees, the degree of culpability of defendants as well as time plaintiffs are forced to litigate against respective defendants are appropriate considerations in determining allocation of fee awards. *Id.*

This case focused on McKinley and his actions. McKinley argues that time relating to Lee's Summit and Conlee in particular should not be charged to McKinley. However, those Defendants were charged with condoning or covering up McKinley's misconduct and claims against them were intimately tied to claims against McKinley. White's pursuit of Lee's Summit and Conlee ultimately resulted in their agreement to indemnify a judgment against McKinley. *See generally Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331 (1st Cir. 2008) (affirming fee award for efforts to collect civil rights judgment). The work pertaining to Lee's Summit and Conlee cannot be severed. McKinley is not entitled to the per capita reduction in fee responsibility he claims.

### C. Expenses

White requests reimbursement for $170,733.86 of taxable expenses and other costs. Without explanation, but apparently relying on his per capita apportionment theory, McKinley requests that the amount attributable to him be reduced to $71,234.48. For the reasons stated above, the Court declines to reduce the cost award as McKinley suggests.

However, there is one problem with White's expense request, though the parties do not discuss the issue in their briefing. White's expense exhibits include invoices which

19

apparently charge for computer assisted legal research. Though the rule is controversial, in the Eighth Circuit, such charges are a component of attorney fees and are not taxable in addition to a fee award. *Standley v. Chilhowee R-IV School Dist.*, 5 F.3d 319 (8th Cir. 1993); *Sun Media Sys., Inc. v. KDSM, LLC,* — F. Supp. 2d —, No. 4:06-cv-106, 2008 WL 4969159 (S. D. Iowa Nov. 24, 2008) (recognizing disagreement by district courts). As White's request is supported with documentary evidence and for the reasons discussed above, and with the exception of the computer assisted legal research charges, White may recover the expenses and other costs requested.

## II. Conclusion

Accordingly, it is hereby ORDERED that White's Motion for an Award of Fees and Costs [Doc. # 399] is GRANTED in part and DENIED in part as noted in the body of this Order.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: March 26, 2009
Kansas City, Missouri