# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| THEODORE W. WHITE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 05-0203-CV-W-NKL |
| | ) | |
| RICHARD McKINLEY, et al, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ORDER

Plaintiff Theodore White ("White") brought this lawsuit against Defendant Richard McKinley ("McKinley"), alleging that he and his co-defendant deprived White of a fair criminal trial on child molestation charges. Before the Court are White's Motion for Sanctions [Doc. # 385], as well as McKinley's Motion to Strike Plaintiff's Reply Suggestions in Support of His Motion for Sanctions [Doc. # 408]. The Court denies both motions.

## I.      Background

The parties tried this case over two weeks. During the trial, Mr. James Ensz, McKinley's counsel, repeatedly violated the Court's procedural and evidentiary orders. The Court attempted to enforce its orders along the usual continuum: first, the Court reminded Mr. Ensz of the rulings; then, admonished him; then levied modest fines. Yet Mr. Ensz continued to violate orders of the Court.

Nonetheless, the jury returned a verdict in favor of White, awarding him $14 million

1

in damages, $1 million against McKinley in punitive damages, and $1 million in punitive damages against McKinley's co-defendant.

White states that Mr. Ensz's pattern of misconduct demonstrated a deliberate attempt to benefit McKinley by circumventing the Court's rulings. White argues that Mr. Ensz "slopped in" barred evidence through argument and improper questioning. White believes that the sizeable actual and punitive damages awards would have been higher had Mr. Ensz not colored the trial with barred evidence. He moves the Court to sanction McKinley for his counsel's misconduct by entering a default judgment in favor of White.

## II.     Trial Misconduct

### A.     Violations of Evidentiary Rulings

Mr. Ensz refused to follow the Court's orders barring certain evidence and informed the jury that there was evidence that the Court prevented McKinley from introducing. (*See, e.g.,* Tr. at 77 (telling jury that it would not be permitted to see the videotape of White's daughter's child protection service interview); 1617 (emphasizing the redactions in a document).) The following are some examples of Mr. Ensz's failure to comply with the Court's evidentiary rulings.

#### 1.     Evidence of Guilt

Mr. Ensz violated the Court's order barring evidence of whether White was guilty of molesting his daughter. During the August 13 teleconference, the Court ruled that such evidence, as well as evidence of White's innocence, was not relevant to the question of whether McKinley deprived White of a fair trial, except to the extent the evidence related to

2

McKinley's good or bad faith. (Aug. 13 Tr. at 79.) Mr. Ensz ignored the Court's ruling repeatedly. The following are some examples.

### a. Allegations of White's Daughter

Mr. Ensz introduced barred evidence in an attempt to show that White's daughter had told the truth about her molestation. He told the jury during opening statements that White's daughter is steadfast today in her allegations of molestation. (Tr. at 71.) When Plaintiff's counsel objected, Mr. Ensz did not even try to explain why the evidence was admissible.

While questioning White's daughter, Mr. Ensz also elicited improper testimony concerning her molestation allegations:

Q.   Did you find yourself tending to favor one parent or the other?

A.   My mom.

Q.   And was there a particular reason that you felt you were favoring your mom as opposed to your dad?

A.   Because of the way he treated her.

Q.   Was it more of a matter of the way he treated her as opposed to you or the other children?

A.   It was more the way that he treated her.

Q.   Okay. Did he treat you – without getting into the issue sexual--

MS. SHORT: Your honor--

THE COURT: Sustained. Sustained.

(Tr. at 1110. *See also* Tr. 1111:8-18 (eliciting the claim that White would buy his daughter gifts after he mistreated her).) This evidence was not admissible and Mr. Ensz never

3

provided a good faith explanation for asking the questions. His violations continued into his closing when Mr. Ensz referred to the "fact" that Jamie had been abused. (Tr. at 2014, 2026.)

As discussed in White's brief, there are numerous other examples of Mr. Ensz's subtle and not so subtle efforts to communicate to the jury that there was evidence of White's guilt and that evidence was being withheld from the jury. And when objections were raised, Mr. Ensz frequently did not even try to explain how his conduct was appropriate. He just moved on, having already left the desired impression with the jury.

### b.    McKinley's Investigation

Mr. Ensz elicited testimony from McKinley about irrelevant portions of his investigation that tended to show White's guilt. (*See, e.g.,* Tr. at 24 (Court admonishing not to introduce evidence of McKinley's investigation after March 30); Tr. at 1643 (Mr. Ensz directly asking about "follow up" investigation which occurred after March 30).)

### c.    Child Protective Services

After being warned by the Court to limit his questioning regarding the child protection service interview and videotape, Mr. Ensz repeatedly questioned witnesses about it, though he was unable to articulate an admissible basis for doing so. After several admonitions, the Court fined Mr. Ensz for his repeated abuses. (Tr. at 1103-04; 1638-39; 1816-18.)

### 2.    Costa Rican Incarceration

Mr. Ensz violated the Court's order in limine with regard to Costa Rican imprisonment. During the August 13 teleconference, the Court ruled that the parties should

4

not refer to White's incarceration in Costa Rica, which resulted from his fleeing after he was found guilty of molestation at his first criminal trial. (Aug. 13 Tr. at 20.) White's counsel revised their damages expert's report to delete reference to that incarceration, and stated that they informed Mr. Ensz of the revision. (Tr. at 1498-1500, 1505-06.) Nevertheless, Mr. Ensz questioned the expert so as to indicate that the report included an improper calculation of incarceration. (Tr. at 1498.) White could not respond without violating the Court's order in limine. Though Mr. Ensz attempted to explain himself by stating that he could not tell whether the report addressed the Costa Rican incarceration – in violation of the Court's in limine order – he could not explain why he did not object to the report if he thought it did, or why he did not seek clarification outside the presence of the jury if he had a concern. (Tr. at 1507.) His explanation for asking the question was disingenuous.

### 3. Probable Cause

Mr. Ensz violated the Court's order in limine with regard to probable cause. At the pretrial conference, the Court ruled that evidence concerning whether there was probable cause to proceed with trying White for molestation was irrelevant to whether he received a fair trial. (Pretrial Tr. at 56.)[1] During trial, the Court specifically instructed Mr. Ensz not to question Ms. Kanatzar, the prosecutor, regarding her probable cause determination. (Tr. at 1728, 1814.) When Mr. Ensz then asked what information was submitted to her by McKinley when he presented the case to her, the Court sustained White's objection. (Tr. at

---

[1] At the request of the Defendants, the Court had previously granted summary judgment on White's claim related to probable cause.

1818. *See also* Tr. at 95, 2024) (discussing information upon which the prosecutors had relied in deciding to proceed).) When Mr. Ensz then inquired whether Ms. Kanatzar received any medical information – again insinuating that she had probable cause to bring suit and that there was evidence of guilt that the prosecutor believed– the Court found him in contempt. (Tr. at 1818.) Even if there was good evidence of White's guilt, a police officer is not permitted to deliberately withhold potentially exculpatory evidence from a defendant.[2]

### 4. Truth of McKinley's Deposition Testimony

Mr. Ensz violated the Court's order with regard to Ms. Mettler's testimony about McKinley's deposition. The Court ruled that Ms. Mettler, another prosecutor, would not be permitted to talk about anything beyond being present for the deposition, or what she said to McKinley before the deposition. (Tr. at 1720; 1734.) The matter was discussed at length and Mr. Ensz stated he did not have any question about the order. Mr. Ensz then proceeded to elicit testimony from Ms. Mettler indicating that she was present for McKinley's testimony and that she heard the questions being asked, attempting to create the inference that she would have stopped the deposition if she believed McKinley's testimony was improper. (Tr. at 1856-57.) The Court held him in contempt, but did not assess a fine at that time. *(Id.)*

### B. Speaking Objections

Mr. Ensz consistently violated the Court's orders with regard to objections. At the

---

[2]The Court specifically asked Mr. Ensz during the trial whether McKinley failed to keep the diary because he thought that there was so much other evidence of guilt. Mr. Ensz said that was not the theory of the case.

6

pretrial conference, the Court cautioned the parties that speaking objections were not permitted. (Doc. # 316, Pretrial Tr. at 17.[3]) The Court repeated this caution throughout the trial. (*See, e.g.*, Tr. at 149; 338; 354 ("Mr. Ensz, I told you – I really want to give your client a fair trial, but I have told you that the rules are you need to say what your objection is from there. "); 495; 496 ("I don't know how else to explain this to you. . . . I don't want to injure [McKinley]. But I also have to have you follow the rules of the court."); 655 ("Mr. Ensz, you have to stop making these speaking objections. I've told you repeatedly to stop it. The next time you do it, I'll hold you in contempt and I'll fine you $100."). Speaking objections serve to pollute the trial with improper argument, coaching of witnesses, and jury confusion. *See* Fed. R. Evid. 103(c) ("In jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements . . . in the hearing of the jury.").

Nevertheless, Mr. Ensz consistently made speaking objections. (*See, e.g.,* Tr. at 49, 116, 148-49, 337-38, 358, 359, 365, 495 ("Okay. I'm going to object on the grounds of foundation. I'm going to object on the grounds that the question is a compound, convoluted type of question that's been asked, and the answer given under the circumstances is an answer that is correct. It's an answer that would reasonably be given under the circumstances based

---

[3] The Court explained:
> I expect you to make your objections from counsel table. And I don't want a speaking objection.
> Let me clarify what I mean by that. If you think it's hearsay, you need to say, I object, it's hearsay. I don't want to hear why you think it's hearsay. I just want you to say hearsay. If I need you to approach, I'll ask you to approach.

on the compound nature of the question.").  Eventually, the Court fined him for doing so. (Tr. at 856.)

In his response brief, McKinley objects in particular to the Court's finding that Mr. Ensz was in contempt for making speaking objections, including an objection based on "pleading poverty."  Immediately before making the "pleading poverty" objection, Mr. Ensz made a speaking objection to a different question on the basis of relevance, stating, "The details of – we have the result of the trial."  (Tr. at 897-98); shortly thereafter he followed with the "pleading poverty" objection.  The Court informed Mr. Ensz that it would find him in contempt unless he could point to an evidentiary rule which prohibited "pleading poverty." There is no such objection, and even now McKinley does not  point to a rule of evidence that addresses "pleading poverty.[4]

### C.    Nature and Effect of Trial Misconduct

Even if Mr. Ensz believed the Court's procedural and evidentiary orders to be in error, he was bound to abide by them.  His client had, and still has, an opportunity to appeal.  Mr. Ensz spoke of his own expansive trial experience (Tr. at 1166); he is not ignorant of his duties with regard to Court rules and orders.

Yet, Mr. Ensz did not follow the Court's orders.  He was not swayed from his course by admonishments or nominal sanctions and the record alone does not reflect the challenging tone often used by Mr. Ensz in addressing the Court.  Given the evidence against both

---

[4] The Court would not normally make an issue of something like this but Mr. Ensz's repeated violations had created a disruptive environment in the trial that threatened to derail it.

Defendants, a mistrial would only have benefitted McKinley by delaying a verdict; Mr. Ensz certainly understood that a mistrial for his misconduct would be detrimental to White. The sheer number of times Mr. Ensz, experienced counsel, violated the Court's orders tends to indicate a deliberate pattern. However, for the following reason, the Court will not at this time rule on White's Motion for Sanctions.

### D. White's request for Default Judgment

Although there is ample evidence of Mr. Ensz's misconduct,[5] White has failed to show in any concrete way how he has been injured. White was successful at trial on the merits, received a substantial judgment and White's attorneys have been awarded attorney fees for their time spent on the litigation. While White claims that he would have received more damages but for the misconduct, there is no concrete evidence in the record from which this conclusion can be inferred. Granting a default judgment under these circumstances provides little benefit to White and deprives McKinley of being able to exercise his full right of appeal. Furthermore, there is no evidence of complicity by McKinley.

While the Court could pursue criminal contempt charges against Mr. Ensz for violating the Court's orders, *Plaintiffs' Baycol Steering Committee v. Bayer Corp.,* 419 F.3d 794 (8th Cir. 2005), White has not requested that action. For these reasons and because this litigation is not yet completed, the Court denies without prejudice White's Motion for Sanctions.

---

[5]Mr. Ensz, in his response to White's Motion for Sanctions, does not offer a defense to almost any of the misconduct alleged.

## III.   Conclusion

Accordingly, it is hereby ORDERED that White's Motion for Sanctions [Doc. # 385]

is DENIED WITHOUT PREJUDICE.  It is further ORDERED that McKinley's Motion to

Strike [Doc. # 408] is DENIED as moot.


                                                    s/ Nanette K. Laughrey
                                                    NANETTE K. LAUGHREY
                                                    United States District Judge

Dated:  April 6, 2009
Kansas City, Missouri

10